IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:08CR277 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| LARRY T. DOTSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant's motion under 28 U.S.C. § 2255 to "Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("§ 2255 motion"), Filing No. 45. In his motion, Larry T. Dotson ("Dotson") asserts ineffective assistance of counsel before and during sentencing. Dotson asserts that counsel was ineffective before sentencing in failing to fully discuss the incident which led to his arrest. Dotson also asserts that counsel was ineffective during sentencing in failing to discuss the presentence report with him and in failing to object to a 4-point enhancement in the sentencing guidelines for a felon in possession of a firearm charge.

## I. FACTS

The government indicted Larry T. Dotson for being a felon in possession of a firearm under 18 U.S.C. 922(g)(1). Filing No. 1, Indictment. He entered a plea of guilty to the charge pursuant to a plea agreement. Filing No. 26 (Sealed), Plea Agreement. The plea agreement was made subject to Federal Rule of Criminal Procedure 11(c)(1)(C), which bound the court to the sentencing range in the plea agreement. *Id*. In the plea agreement, both parties agreed that U.S.S.G. §§ 2K2.1(b)(4)(A) and 2K2.1(b)(6) would be applied in determining Dotson's offense level. *Id*. Both of these sentencing enhancements were

discussed in the plea agreement and at the Rule 11 hearing.  As part of the agreement,

Dotson acknowledged that he was a felon in possession of a firearm, and in order to

receive a reduction of his sentence, agreed with the following:

1.    He would not make any downward departure motion, seek a reduction
      of sentence by deviation from the Guidelines or seek or suggest a
      sentence below the Guidelines.  He also agreed that the Guideline
      sentence was reasonable.
2.    He would waive his rights to appeal and to post-conviction relief,
      unless the Eighth Circuit Court of Appeals or the United States
      Supreme Court later found the charge failed to state a crime, or there
      were grounds for ineffective assistance of counsel or prosecutorial
      misconduct.
3.    That his cooperation would be considered by the United States under
      U.S.S.G. § 5K1.1, and/or 18 U.S.C. § 3553(e), and/or Federal Rule
      of Criminal Procedure 35(b), in determining whether to file a motion
      to reduce his sentence.
4.    The firearm was stolen.
5.    Another felony was being committed at the time of this offense [flight
      to avoid arrest under a state law].

*Id*.

A change of plea hearing was held on September 19, 2009, and Dotson pled guilty

to Count I of the Indictment.  Filing No. 23.  At the hearing, the court asked Dotson if he

was thinking clearly enough to make the decision to enter his plea.    Filing No. 49,

Transcript of Plea Proceedings, at 4.  Dotson replied, "Yes, Your Honor."  *Id*.  The court

then asked if Dotson was taking any medications or under the influence of drugs or

alcohol, to which Dotson replied no.  *Id*. at 5.  The following exchange occurred:

THE COURT:  Have you had enough time to talk to your lawyer about this
decision?
THE DEFENDANT:  Yes, Your Honor.
THE COURT:  Have you had enough time to think about it yourself?
THE DEFENDANT:  Yes.

*Id*. The court asked Dotson if he understood the charges against him, the evidence the government had, that he had a right to plead not guilty and that he was entitled to a jury trial. *Id*. at 5-6. Dotson responded that he understood. *Id*. The court also asked about Dotson's satisfaction with his lawyer:

> THE COURT: Have you talked with your lawyer about the evidence the government has against you?
> THE DEFENDANT: Yes.
> THE COURT: Have you talked to him about whether you should go to trial or not?
> THE DEFENDANT: Yes.
> THE COURT: Are you satisfied with the services your lawyer has given you?
> THE DEFENDANT: Yes.

*Id*. at 6. A colloquy regarding sentencing also ensued:

> THE COURT: Have you talked to Mr. Knoblauch [defense attorney] about the sentencing guidelines and how they could apply in your case?
> THE DEFENDANT: Yes.
> THE COURT: What is your understanding about how much jail time you could receive if the sentencing guidelines are applied?
> THE DEFENDANT: 70 months[1].
> THE COURT: Is that approximately correct, Mr. Knoblauch?
> MR. KNOBLAUCH: Yes, Your Honor.
> THE COURT: Mr. Dotson, the reason I ask you this question is I want to be sure that you have a realistic understanding about how much jail time you're facing before you enter into this guilty plea. And I also want to be sure that Mr. Knoblauch has talked to you about the guidelines and how they apply. Have you had enough time to talk to him about these issues?
> THE DEFENDANT: Yes, Your Honor.

*Id*. at 7-8.

> THE COURT: Paragraph 5, the bottom line, as I see it, is that you have agreed that if the court accepts this plea agreement you're going to get a guideline sentence, and you're telling me that a guideline sentence is 70 months. Now, the problem with that is nobody is real sure what the guideline

---

[1]Note that the court had not yet received the Presentence Investigation Report ("PSR") at the time of this hearing, which recommended a range of 92-115 months. Filing No. 40, PSR (Sealed), at 26, Filing No. 49, Transcript of Plea Proceedings, at 12.

sentence is because you haven't asked the probation office or you haven't asked me to come up with a guideline calculation. But you're agreeing whatever I decide is the guideline sentence is what you're going to get.  Do you understand that's what this says?
THE DEFENDANT: Yes, Your Honor.

*Id*. at 12, lines 11-21.  The court further discussed with Dotson, the following:

In paragraph 12 you give up nearly all of your rights to appeal this case to another court.  So whatever sentence you get is the sentence that you're going to have, unless you can show that your lawyer was incompetent for some reason, or later on the crime is changed by law, which I think I have been practicing law for thirty or forty years and this has always been a crime and I doubt that will change.  So really the only thing you're giving up—the only thing this says is that you're going to have to abide by whatever decision the court makes, you're not going to appeal it unless it has to do with your lawyer being incompetent.  Do you understand that?

*Id.* at 14:7-21. Dotson confirmed he understood all the terms and conditions of his plea

agreement.  *Id*.

The court questioned Dotson regarding the plea agreement and his discussions

about it with his lawyer:

THE COURT:  Now let's talk about the plea agreement for a minute.  Do you have a copy of that document in front of you, sir?  Your lawyer appears to have placed the plea agreement in front of you. Do you recall reviewing this document with him?
THE DEFENDANT:  Yes.
THE COURT:  Did you read and sign this document?
THE DEFENDANT:  Yes.
THE COURT:  Do you have any difficulty reading?
THE DEFENDANT:  No.
THE COURT:  And do you think you understood all the terms and conditions of this agreement?
THE DEFENDANT:  Yes.

*Id*. at 8-9.  The court then addressed the issue of the instant charge being committed as

part of another felony:

4

> THE COURT:  [A]nd as I understand . . . that you had the firearm and it was part of another felony, and that adds points under the guideline calculation. Did your lawyer talk to you about that?
> THE DEFENDANT:  Yes.
> THE COURT:  What was the other felony conviction—the other felony offense?  You had drugs or something?
> MR. WELLMAN [Attorney for the United States]:  It was flight to avoid arrest.
> THE COURT:  Is that your understanding, sir, the other felony that was—so what happened is they team up the felon in possession of a firearm with another charge, and the other charge is flight to avoid arrest.  Have you talked to your lawyer about that?
> THE DEFENDANT:  Yes.
> THE COURT:  And do you understand that as well?
> THE DEFENDANT:  Yes.

*Id*. at 13-14.  The court found that Dotson was competent to plead; he understood the nature of the charge against him and the possible penalties; he fully understood his rights; he willingly, voluntarily, knowingly, and intelligently waived his rights; and he understood the consequences of waiving his rights.  *Id*. at 17-18.  The court then accepted Dotson's guilty plea, but approval of the plea agreement was deferred pending review of the PSR by the United States Office of Probation.  *Id*. at 21.

In the PSR, the Probation Office determined Dotson's base offense level as 20.  Filing No. 40, PSR (Sealed), at 7.  It further determined that Dotson should be subject to a 4-point enhancement because the charged offense occurred during the commission of another felony, to wit: felony flight to avoid arrest; and that he should be subject to a 2-point enhancement because the firearm was stolen.  *Id*. at 5-7.  The Probation Office also found that a 3-point reduction was applicable under U.S.S.G. § 3E1.1(a), due to the Dotson's acceptance of responsibility.  *Id*. at 6-7.  After these calculations, Dotson's total offense level was 23.  *Id*. at 7.

5

Dotson was assessed 23 criminal history points for crimes such as driving under suspension, assault and battery, obstructing the administration of law, possession of a deadly weapon by a felon, failure to appear, burglary, possession of one ounce or less of marijuana, and unlawful display of plates. *Id*. at 8-17. Pursuant to U.S.S.G. § 4A1.1(d), two points were added because he was on probation at the time of committing the instant offense. *Id*. at 17. Pursuant to U.S.S.G. § 4A1.1(e), one point was added because the instant offense was committed less than 2 years after release from imprisonment for the offense for which 2 points were added under U.S.S.G. § 4A1.1(d). *Id*. These calculations resulted in 26 criminal history points for a criminal history category of VI. *Id*. at 18. Dotson's Guidelines range, at offense level 23 and a criminal history category VI, was 92 to 115 months. *Id*. at 26.

The court accepted the plea agreement at the sentencing hearing on February 13, 2009. Filing No. 44, Transcript of Sentencing Procedings at 2. The government adopted and the defense counsel had no objections to the PSR at the sentencing hearing. *Id*. at 2-3. The court asked the defendant if he had the opportunity to review the PSR, and he replied that he had reviewed it. *Id*. at 3.

At allocution, the defense attorney asked the court to impose the minimum sentence under the Guidelines. *Id*. at 4. The attorney for the United States stated that the government would ask for the low guideline of 92 months. *Id*. Dotson was sentenced to 92 months' imprisonment and three years of supervised release. *Id*. at 7.

Dotson included two affidavits at the end of his brief in support of his § 2255 motion. Filing No. 46, Brief in Support of Motion to Vacate, at 11-12. Those affidavits are from Dotson and his mother, Martha Richey. *Id*. Both Dotson and his mother stated that they

6

each tried several times to reach Mr. Knoblauch after sentencing to discuss appealing Dotson's sentence and were unsuccessful. *Id*. Each also stated that Mr. Knoblauch did not return their calls until after the time for an appeal had run. *Id*.

The government attached a sworn affidavit from Dotson's attorney to its answer to his § 2255 motion. Filing No. 65-1, Index in Support of the United States's Answer to Defendant's Motion. In that affidavit, Mr. Knoblauch stated that he did represent Dotson during the instant case and met with him "more than once" to discuss the case with him. *Id*. at 1. Mr. Knoblauch described discussions he had with Dotson at critical points in his case, notably during plea negotiations, sentencing, and during the time allowed for appeals after sentencing. *Id*. at 1-3. Specifically, Mr. Knoblauch stated that he had reviewed discovery materials and discussed them with Dotson, that he had discussed all plea agreements with Dotson, that the government was adamant Dotson stipulate to U.S.S.G. §§ 2K2.1(b)(4)(A) and 2K2.1(b)(6) enhancements as part of his plea agreement, and that he had thoroughly discussed the plea agreement and answered all the questions that Dotson had at that time. *Id*. at 1-2.

Mr. Knoblauch also stated

Prior to entering into the plea agreement, Mr. Dotson and I discussed his waiver of appeal. At the change of plea hearing, the district court discussed the appeal waiver with Mr. Dotson and he acknowledged he had waived his appeal rights. . . . I explained the applicable United States Sentencing Guidelines with Mr. Dotson. . . . Prior to sentencing I met with Mr. Dotson and discussed the Presentence Investigation Report. . . . The enhancements Mr. Dotson claims I should have objected to were enhancements that we had discussed and he had stipulated to in his plea agreement.

*Id*. at 2.

7

Mr. Knoblauch further discussed the post-sentencing discussions he had with Dotson. *Id.* According to Mr. Knoblauch, Dotson was concerned about the sentencing enhancement and length of his sentence. *Id.* Mr. Knoblauch explained to Dotson and his mother that it was his legal opinion that the plea agreement would not allow for a successful appeal, and he believed Dotson and his mother accepted that opinion. *Id.* Mr. Knoblauch then stated that he informed Dotson he had not fulfilled his financial obligations to him and if Dotson wanted to appeal, he would have to do so through the Federal Public Defender's office. *Id.* Mr. Knoblauch stated that after that conversation, he did not hear from Dotson or his mother until after the time for an appeal had run. *Id.*

## II.  DISCUSSION

### A.  Law

Under 28 U.S.C. § 2255, a federal prisoner has "an avenue for relief if his 'sentence was imposed in violation of the Constitution or laws of the United States, or . . . was in excess of the maximum authorized by law.'" *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010) (quoting 28 U.S.C.A. § 2255(a)).  Ineffective assistance of counsel issues are appropriately raised in collateral proceedings.  *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) (quoting *U.S. v. Woods*, 270 F.3d 728, 730 (8th Cir. 2001)). The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, or our adversary process. *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

The right to counsel includes the right to reasonably effective counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to make out a claim of ineffective

8

assistance, a petitioner must satisfy the familiar *Strickland* standard, "which requires a showing 'that his lawyer's performance fell below the minimum standards of professional competence (deficient performance) and that there is a reasonable probability that the result of the proceedings would have been different if his lawyer had performed competently (prejudice).'" *King v. United States*, 595 F.3d at 852 (quoting *Alaniz v. United States*, 351 F.3d 365, 367-68 (8th Cir. 2003)).

Deficient performance "is that which falls below the 'range of competence demanded of attorneys in criminal cases.'" *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010) (quoting *Strickland*, 466 U.S. at 687). There is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy. *Toledo v. United States*, 581 F.3d 678, 680 (8th Cir. 2009) (quoting *Garret v. United States*, 78 F.3d 1296, 1301 (8th Cir. 1996)). "The standard is an objective one, viewed in light of professional norms prevailing when the representation took place." *Sinisterra*, 600 F.3d at 906; *Bobby v. Van Hook*, 130 S. Ct. 13, 16 (Nov. 9, 2009) (per curiam). The court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688.

To establish prejudice under *Strickland*, a petitioner must "demonstrate that there is a reasonable probability that, but for counsel's claimed unprofessional errors, the result of the proceeding would have been different." *Christenson v. Ault*, 598 F.3d 990, 996 (8th Cir. 2010). In the sentencing context, prejudice can be found with a showing that, had an argument been presented, a defendant likely would have received a much shorter sentence. *King*, 595 F.3d at 852.

Under United States Sentencing Guidelines, a defendant is subject to a 4-point increase in criminal offense level if a firearm offense occurred in connection with another felony. "If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . [in calculations] increase by 4 levels." U.S.S.G. § 2K2.1(b)(6). The Commentary to § 2K2.1(b)(6) defines "another felony offense" as "any federal, state, or local offense, other than explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, ***regardless of whether a criminal charge was brought***, or a conviction obtained." (Emphasis added.) U.S.S.G. § 2K2.1(b)(6) cmt. N. 14(C) (2009).

## B. Analysis

The court finds that Dotson has not satisfied the *Strickland* standards. The record shows that Knoblauch's assistance was reasonable under the circumstances and that it was well within the minimum standards of professional conduct. Mr. Knoblauch met with Dotson and discussed the charge and its implications with him. He participated in plea agreement negotiations and discussed those negotiations and the government's position regarding the agreement with Dotson. He also discussed the PSR, Sentencing Guidelines, and likely sentences with Dotson. Mr. Knoblauch stated in his affidavit that these discussions had occurred, and court transcripts support this. The court performed a thorough inquiry at both the plea and sentencing hearings to determine if Dotson felt that his lawyer had satisfactorily represented him. Dotson answered all such questions in the affirmative.

After sentencing, Mr. Knoblauch held the professional opinion that an appeal would be unsuccessful for Dotson.   He was reasonable in this opinion because the plea agreement allowed for only extremely limited possibilities for appeal.   Dotson does not base his § 2255 motion on a determination by a higher court that his offense can no longer be a chargeable offense.   The record shows no evidence of prosecutorial misconduct or ineffective assistance of counsel.   Dotson had agreed to these limited possibilities for appeal in the plea agreement, as is evidenced by his comments in court transcripts.   None of those occurred in this case; Mr. Knoblauch was not deficient in his professional obligations in not filing an appeal.

There is nothing in the record to suggest that Mr. Knoblauch performed below minimum professional standards.   Even if there were, Dotson would still have to prove the second prong of the *Strickland* standards, which he cannot.   Dotson asserts that Mr. Knoblauch should have objected to the 4-point enhancement because Dotson was never officially charged with flight to avoid arrest.   Mr. Knoblauch's failure to object, Dotson asserts, prejudiced him by subjecting him to a longer sentence.   Dotson's assertion is unfounded.   If Mr. Knoblauch would have brought an appeal based on this reasoning, it would likely have been dismissed as frivolous.   There is no requirement under U.S.S.G. § 2K2.1 that a charge actually be brought.   The language of Application Note 14(C) of § 2K2.1 merely requires that the offenses be committed in connection with each other, whether or not a charge is brought.   An appeal based on the 4-point enhancement would not have been successful; therefore, Dotson cannot show that Mr. Knoblauch's conduct prejudiced his case.

Accordingly, for the reasons stated herein, the court finds the motion for § 2255 relief is denied.

THEREFORE, IT IS ORDERED that Dotson's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Filing No. 45) is dismissed.

DATED this 16th day of August, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

<sup>*</sup>This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.